# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHERYL HERNANDEZ DITCHARO, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 23-7399** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | * | **SECTION L** |

## ORDER & REASONS

Before the Court is a motion by Plaintiffs Gina Ditcharo Williams, Cheryl Hernandez Ditcharo, and Anthony Joseph Ditcharo, III, to remand the case to Orleans Parish Civil District Court. R. Doc. 12. Defendants Union Pacific Railroad Company ("Union Pacific") and Huntington Ingalls Incorporated ("Avondale") oppose the motion. R. Docs. 15, 16. Considering the briefing and the applicable law, the Court now rules as follows.

## I.    BACKGROUND

This case arises out of Anthony Ditcharo's alleged exposure to asbestos, which later developed into mesothelioma. R. Doc. 12 at 1. On November 30, 2022, he sued several of his employers who operated in worksites where asbestos was present. *Id.* While Ditcharo first filed suit in the Orleans Parish Civil District Court, Avondale removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1) on December 27, 2023. R. Doc. 1 at 3. Though originally assigned to Judge Vitter and then Judge Papillion, they both recused themselves from the case due to conflicts of interest. R. Doc. 5; 28 U.S.C. § 455(b)(4). Thus, it was reassigned to this Section of the Court.

In the 1960s and 1970s, Avondale contracted with the Government to construct and repair Navy ships. During that time, Ditcharo worked at various sites throughout Louisiana, where he alleges that he was exposed to asbestos-containing products. R. Doc. 1-2 at 4. When inhaled or ingested, asbestos can cause dangerous diseases including asbestosis and mesothelioma. *Id.* at 5.

Ditcharo alleges that he was diagnosed with mesothelioma in August 2022, which he attributes to his asbestos exposure. *Id.* Ditcharo passed away on January 17, 2023, and on February 24, 2023, Ditcharo's surviving spouse and adult children were substituted as plaintiffs, and brought survival and wrongful death clams as well. R. Doc. 1 at 3.

Ditcharo's complaint contends that his employers knew, or should have known, that, based on studies and other information available at the time, their use of asbestos products would injure him. *Id.* Therefore, Plaintiffs allege that his employers were negligent in instructing him to perform work around such products. *Id.* at 5, 6-8. The complaint also asserts a claim under the Federal Employers' Liability Act ("FELA") against Union Pacific, an employer whose work impacts interstate commerce, *id.* at 8-10, as well as other claims of strict liability and conspiracy against certain other defendants. *Id.* at 12-17.

In response, four Defendants—Paramount Global, Foster Wheeler LLC, General Electric Company, and Redco Corporation—issued separate answers, in which they generally deny the allegations in Ditcharo's complaint and assert affirmative defenses. R. Docs. 9, 10, 11, 14. Additionally, Pharmacia LLC filed an answer to Avondale's cross claim against it, which Avondale asserted in its notice of removal. R. Doc. 6.

On January 24, 2024, Ditcharo filed the instant motion. R. Doc. 12.

## II.      PRESENT MOTION

In their motion, Plaintiffs argue that removal of the case to this court was improper because Avondale was not acting under a federal officer as defined by 28 U.S.C. § 1442(a)(1). *Id.* at 1. Thus, they ask this Court to remand the entire case back to the Orleans Parish Civil District Court. *Id.* Should the Court find that Avondale properly removed the matter under §1442(a)(1), Plaintiffs ask the Court to sever and remand their claims alleged against all other defendants. *Id.* Finally, if

the Court does not wish to remand all remaining claims, Plaintiffs ask that their FELA claims be severed and remanded because such claims are non-removable under 28 U.S.C. §1445.

Avondale and Union Pacific both filed motions in opposition. R. Docs. 15, 16. Avondale argues that removal was proper, and accordingly, the Court should not remand any of plaintiffs' claims to state court. R. Doc. 16. It further argues that supplemental jurisdiction is appropriate over the remaining claims because they arise out of the same case or controversy. *Id.* at 21; 28 U.S.C. § 1367(a). Avondale then argues that none of the four grounds under which a federal court can decline supplemental jurisdiction are met in this case. *Id.* at 21-23. Next, Avondale argues that the FELA claims, despite being "non-removable," can properly come before this Court under supplemental jurisdiction. *Id.* at 23-25.

In its opposition, Union Pacific only discussed Plaintiffs' arguments regarding removal of the FELA claims and took the same general position as Avondale on the issue. R. Doc. 15. Union Pacific argues that while 28 U.S.C. §1445 bars such claims from being removed, it does not eliminate the Court's subject matter jurisdiction over the FELA claims upon removal. *Id.* at 5. In other words, while FELA claims cannot be the triggering federal cause of action for removal, those claims *can* be removed if supplemental jurisdiction is properly asserted, and Union Pacific argues that it has been here. *Id.* at 5.

### III.    LAW AND ANALYSIS

### a.    Avondale Properly Removed the Case Under 28 U.S.C. §1442(a)(1).

Federal courts are courts of limited jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Under 28 U.S.C. § 1442(a)(1), a defendant may remove civil and criminal matters brought against "any officer (or any person acting under that officer) of the United States . . . in an official or individual capacity, for or relating to any act under color of

such office." 28 U.S.C. §1442(a)(1).

The Fifth Circuit holds that to successfully remove a case pursuant to §1442(a)(1), four elements must be met. A defendant must show that "(1) it is a 'person' within the meaning of the statue, (2) it has acted pursuant to a federal officer's directions, (3) it has asserted a colorable federal defense, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). The Supreme court further holds that §1442(a)(1) is to be liberally construed as "[t]he statue is not 'narrow' or 'limited. . . [and] it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969).

Here, because the parties do not dispute the first or fourth prong of the *Latiolais* test, the Court begins its discussion with the second prong—whether Avondale acted pursuant to a federal officer's directions. For support, Plaintiffs argue that removal under this prong does not extend to defendants who formerly acted pursuant to a federal officer's orders because of the Eleventh Circuit's recent ruling in *State v. Meadows*, 88 F.4th 1331 (11th Cir. 2023). However, their interpretation of that Court's ruling rings hollow.

In *Meadows*, the Eleventh Circuit held in that §1442(a)(1) does not permit removal by former federal officers. That court, however, did not comment on conduct of individuals who *formerly acted* under federal officers. Further, the Fifth Circuit has previously held in factually similar circumstances as the present case that when Avondale has a federal contract with the Government to repair Navy ships, the second prong is satisfied. *Latiolais*, 951 F.3d at 291 ("Avondale's . . . federal contract with the Navy for repairs to [a navy ship] satisf[ies] the . . . second condition" of the §1442(a)(1) test.). The Court is hesitant to twist the Eleventh Circuit's

holding in Plaintiffs' favor to find that Avondale cannot remove the matter to this court because it formerly acted under the actions of the Navy. Accordingly, the Court finds that Avondale's contract with the Navy in the instant matter satisfies their burden under the second prong.

Next, the Court considers whether Avondale raised a colorable federal defense to Plaintiffs' claim. "To be 'colorable' the asserted federal defense need not be 'clearly sustainable,' as section 1442 does not require a federal official or person acting under him 'to "win his case before he can have it removed."'" *Id.* at 296-97 (internal citation omitted). The Fifth Circuit further recognizes that "if a defense is plausible, it is colorable." *Id.* at 297. In the instant matter, Avondale asserts federal defenses of discretionary immunity as outlined in *Boyle v. United Technologies Corporation* and *Yearsley v. Ross Construction Company*. 487 U.S. 500 (1988); 309 U.S. 18 (1940). The Court centers its discussion of this prong on Avondale's *Boyle* defense.

A *Boyle* defense gives "federal contractors an immunity enjoyed by the federal government in the performance of discretionary actions." *Id.* Under this defense, federal contractors cannot be found liable for design defects if three conditions are met: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. The Fifth Circuit holds that a *Boyle* defense does not apply only to claims recognized as "design defects" but rather, its applicability "depends only upon whether *Boyle's* three conditions are met with respect to the particular product feature upon which the claim is based." *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993). Here, Avondale argues that it has met the three conditions.

First, Avondale submitted affidavit and deposition testimony alleging that the Navy required that Avondale utilize asbestos-containing materials at various shipyards pursuant to the

federal contracts between Avondale and the Navy. Additional testimony alleges that the Navy mandated Avondale to install asbestos-containing materials and follow related safety protocol. The Fifth Circuit has previously held that such testimony "makes colorable that the government approved reasonably precise specifications about the installation of asbestos." *Latiolais*, 951 F.3d at 297. Based on the foregoing, Avondale has met its low burden on this condition.

Second, Avondale submitted evidence that suggests Avondale complied with the Government's specifications on utilizing asbestos-containing products. Through additional sworn testimony, Avondale alleges that the Government regularly inspected Avondale's facilities to supervise the shipbuilding process. During that time, Avondale alleges that it was never "cited, fined, or even warned by . . any federal or state regulatory body regarding [its use] of asbestos." R. Doc. 16 at 13. Another affidavit facially supports Avondale's allegations that it always adhered to Government and industry rules on asbestos air quality because if it had not, then the Government could have cancelled its contracts with Avondale. However, it alleges that the Government never cancelled said contracts. Accordingly, the Court finds that the evidence suggests Avondale has made colorable that Avondale conformed to the specifications set forth by the Government.

Third, Avondale alleges that the Government knew more than Avondale regarding the risks associated with using asbestos materials. Avondale offers the affidavit of one marine engineer who goes as far as saying "Avondale did not have any information regarding the hazards of asbestos that was not known by the Federal Government." R. Doc. 16-2. Thus, it is possible that the Government knew as much—if not more than—Avondale about the dangers of asbestos.

With the evidence provided by Avondale, the Court finds that Avondale's assertion of a *Boyle* defense is colorable and not frivolous. At this stage, the Court need not delve any further into analyzing Avondale's success in asserting this defense but strictly concludes that Avondale

has raised at least a colorable federal defense. As such, any further commentary on whether Avondale has raised a colorable *Yearsley* defense is unnecessary.

The foregoing discussion demonstrates that Avondale meets the conditions for removal under §1442(a)(1). Next, the Court considers the parties' arguments on whether this Court has supplemental jurisdiction over Plaintiffs' other claims.

**b.  The Court Has Supplemental Jurisdiction Over All Remaining Claims**

Since the Court Avondale properly removed the matter, Plaintiffs argue that the Court should remand all claims they have alleged against the other defendants.

The Fifth Circuit provides that removal of an entire case is appropriate "so long as a single claim satisfies the federal officer removal statute." *Savoie v. Huntington Ingalls, Inc.*, 817, 3d 457, 463 (5th Cir. 2016) *overruled on other grounds by Latiolais*, 951 F.3d 286; *see also Morgan v. Hunt. Ingalls, Inc.*, 879 F.3d 602 (5th Cir. 2018) (noting that the entire case would be removable if Avondale can remove the matter pursuant to the federal officer removal statute); Wright & Miller, §3726 ("Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency.").

28 U.S.C. § 1367 further states that when a federal district court has original jurisdiction over a civil action, it "shall have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy." Under 28 U.S.C. § 1367(c), district courts, however, may decline supplemental jurisdiction over a claim in four circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Courts also consider whether the balance of common law factors of judicial economy, convenience, fairness, and comity favor exercising supplemental jurisdiction. *Finney v. Bd. of Comm's of Port of New Orleans*, 575 F. Supp. 3d 649, 668 (E.D. La. 2021) "[N]o single factor" is dispositive, and courts should look to "all [of] the factors under the specific circumstances of a given case." *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992).

On balancing these factors, the Court finds that it has supplemental jurisdiction over Plaintiffs' remaining claims. Plaintiff's state law claims do not "substantially predominate" the allegations against Avondale but rather, all claims—federal and state—are "sufficiently intertwined" with one another. *See Stansbury v. McCarty Corp.*, No. 21-1909, 2022 WL 59212 at *2 (E.D. La. Oct. 4, 2022) (finding supplemental jurisdiction over all of plaintiff's asbestos claims against multiple defendants because the "state law and federal claims [were] sufficiently intertwined"). Though Plaintiffs allege claims against several defendants, all of Plaintiffs' causes of actions arise from his occupational asbestos exposure and resultant mesothelioma. The Court further finds that severing any state law claims would result in a piecemeal litigation which would cause issues down the road, such as establishing virile share credits between alleged joint tortfeasors. Moreover, the Court notes that while the case has been pending in state court for several months, the parties are still in early stages of litigation and trial dates are yet to be established. Consequently, balancing the §1367(c) factors militates against remand.

Lastly, Plaintiffs argue that their FELA claims against Union Pacific should be severed because FELA claims are non-removable under 28 U.S.C. §1445(a). However, as Union Pacific correctly notes, this bar does not eliminate the Court's supplemental jurisdiction over such claims upon removal of the case for other reasons. For instance, Courts in this circuit have held that when a district court has federal officer jurisdiction over at least one claim, the court's supplemental

jurisdiction extends to FELA claims. *See e.g.*, *Hutchins v. Anco Insulations, Inc.*, No. 19-11316, 2021 WL 961662 (E.D. La. May 17, 2021); *Lirette v. N.L. Sperry Sun, Inc.*, 820 F.3d 116 (5th Cir. 1987); *Henry v. Kansas City S. Ry. Co.*, No. 10-469, 2010 WL 2740016 (W.D. La. July 9, 2010).

In *Hutchins*, another section of this Court addressed the interplay between §1442(a)(1) and §1445(a). 2021 WL 961662 at *3-*5. There, a plaintiff sought remand of his Jones Act claim, which incorporated the general provisions of FELA, including §1445(a). After finding that the defendant properly removed the case under §1442(a)(1), the court considered several policy justifications and held that "§1445(a) must give way" to §1442(a)(1). *Id.* at *5. Namely, the court reasoned that the federal officer removal statute is an absolute right to removal whereas §1445(a) is "not a jurisdictional bar" but "a defense to removal that can be waived if not timely invoked." *Id.* at *4. Further, the court stressed that §1442(a) is to be liberally construed in favor of removal. Accordingly, the Court concluded that it has jurisdiction over §1445(a) claims if the matter is properly removed under §1442(a).

For the same policy reasons asserted in *Hutchins*, the Court presently finds that it has supplemental jurisdiction over the FELA claims. Like *Hutchins*, the instant matter was properly removed under §1442(a)(1). Accordingly, the Court's *supplemental* jurisdiction encompasses Plaintiffs' FELA claims, though they would otherwise be *non-removable* under §1445(a). In reaching this conclusion, however, the Court stresses that it is limited to the facts giving rise to this suit as plaintiffs should not be stripped of the right to litigate their FELA claims in state court under other circumstances.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand, R. Doc. 12, is **DENIED**.

New Orleans, Louisiana this 3rd day of April, 2024.

_____
United States District Judge